(69 Misc. Rep. 535.)

### In re MOORE et al.

(Surrogate's Court, Kings County.   November, 1910.)

1. EXECUTORS. AND ADMINISTRATORS (§ 93*)—CONTINUANCE OF DECEDENT'S BUSINESS—LOSS.

Where a will provided that testator's business might be continued for 2 years after his death, if it was conducted at a profit, and that at the end of that time, or sooner, if conducted at a loss, it should be closed, and the business was conducted at a profit for 18 months after testator's death, and for a further 6 months at a loss so small that a substantial profit for the entire 2 years was shown, the executors should not be charged in their account with the loss of the 6 months, where it did not appear that the business was not stopped as soon as practicable after discovery of the loss.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 407, 408; Dec. Dig. § 93.*]

2. COURTS (§ 475*)—CONFLICTING JURISDICTION—ADMINISTRATION OF DECEDENT'S ESTATE—ACCOUNTING.

Executors will not be required to account in the Surrogate's Court for rents collected by them on decedent's realty, where, in a pending action for partition of such realty in the Supreme Court, that court has required the executors to account for such rents.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1232, 1233; Dec. Dig. § 475.*]

3. EXECUTORS AND ADMINISTRATORS (§ 93*)—ACCOUNTING—GOOD WILL OF DECEDENT'S BUSINESS.

Where decedent had conducted his business for 28 years, and after 2 years immediately succeeding his death the executors formed a corporation and took over the business, and carried it on in the same premises, and maintained the business without changing the sign over the premises, and, without attempting to ascertain whether the business had a good will, appropriated it to their own use, they will be charged in their accounting with its estimated value, equal to three times the average profit for a single year during the three fiscal years immediately succeeding decedent's death.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 407, 408; Dec. Dig. § 93.*]

4. EXECUTORS AND ADMINISTRATORS (§ 111*)—ACCOUNTING—CREDIT FOR ATTORNEY'S FEES.

Executors will not be credited in their accounting for money paid for legal advice as to restoration of money improperly lent by them.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 460; Dec. Dig. § 111.*]

Proceedings for judicial settlement of the account of Eliza Beatty Moore and another, executors of and trustees under the will of Claudius F. Beatty.   Judgment rendered.

Levi S. Tenney, for accounting executors.

Thompson & Fuller (John A. Thompson, of counsel), for contestant.

John C. Coleman, for receiver.

A. J. Keogh, special guardian.

KETCHAM, S.   Upon the settlement of this account, objections 4, 6, 8, 9, 10, 11, 12, and 19 remain for disposition.

The fourth objection is overruled.   The will provided that the busi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ness formerly carried on by the testator might be continued for a period of not exceeding two years after his decease, provided the same should be conducted at a profit, and that at the end of that time, or sooner, if conducted at a loss, such business should be closed as soon as practicable by sale or otherwise. The business made a profit during the first 18 months after the decease, and it was then continued for 6 months further at a loss so small that a substantial profit for the entire two years was shown. The duty to close the business, if conducted at a loss, could not arise until a loss became apparent, and it was then to be closed, not at the first appearance of loss, but as soon as practicable. Six months are not shown to have been too long a time in which to determine the existence of loss, even if loss developed or was threatened early in that period, and in any event there is nothing to show that the enterprise was not stopped as soon as practicable after the discovery of the loss.

The sixth objection is overruled. It has been withdrawn so far as it demands that the executors be charged with more than the legal rate of interest upon the loans made by them to the corporation named in this objection. The remainder of the objection is that the loans were unauthorized; but, though the proposition be conceded, it makes no difference in the account.

As to the eighth and twelfth objections, it is at least questionable whether the executors can here account for the rents of lands collected by them. An action for partition of the real estate of which the decedent died seised is pending, and counsel for the objectants assures the court that in such action the Supreme Court has held that the executors should therein account for these rents. It is expedient, if not legally necessary, that the items affecting the real estate should be stricken from the present account. The fear of the executors that in the account in the partition action they might not receive compensation for collecting and administering the rents equal to the commissions of executors is probably vain; for it is not conceivable that the court, which once upheld as valid the trust under which these rents were collected, will deny to the executors who relied upon its decision the compensation which would have been theirs if its first decision had been maintained and the trust had not been finally overthrown upon appeal. But, in any event, the danger of loss to the executors is no reason why the account should be settled in the wrong court.

The ninth objection is that the executors have not accounted for the good will of the decedent's business. This business had been prosecuted by him for at least 28 years. During the 2 years following the death of the decedent, the conduct of the business formerly carried on by him showed a profit for the entire period. The Beatty Tip Printing Company was then formed. The two executors were among the four incorporators, and each took 5 of the 20 shares of the capital stock of the corporation. The business of this company was the same in kind as that which the decedent had conducted; and it has, at all times since the incorporation, been carried on in the premises for years occupied by the decedent as his place of business. The sign in the name of the decedent, which he displayed over the premises, has at all times since his death been maintained without change. The decedent

had about 300 customers for the last 4 or 5 years of his life, one-half of whom were out of the state of New York. He had no capital employed in his business, except that which was sunk in machinery and business furniture. One of the executors testifies that more than one-half of the business came without solicitation; and it is probable, though not clear, that this testimony includes the business of the decedent, as well as that of the company. That the business did not depend solely upon the personal services and prestige of the decedent appears from the fact that it was profitably continued after his death by his executors, and that it was an enterprise sufficiently inviting to induce them to make it their own.

Immediately before the organization of the company, the machinery and other apparatus of the decedent's shop were sold at auction. A large portion of the things so sold were purchased by an engraver, who had done business with the decedent and in turn with the executors, but who had no interest in the enterprise. This purchaser had the purpose of going into the new company and of turning over to it all the things which he purchased, and some of them were purchased for him by one of the executors. When, however, the purchaser determined not to take an interest in the company, the executor bought from him the things he had bought at the auction and sold them to the company in exchange for stock.

The executors made no sale of the good will of the decedent. They took no means to ascertain whether good will existed. If there were any, the executors appropriated it. It cannot be questioned that a good will did adhere to an enterprise such as has been described, and, where executors have converted it to their personal use, and have obliterated the ordinary evidence of its value, they must submit to such estimate of its worth as the circumstances permit and the law ordains.

The profit made by the decedent during the 3 fiscal years preceding his death is shown. During the last 7½ months following these 3 years there was a loss. That the low profit of the year 1904 and the loss during part of the year 1905 were in measure due to exceptional adversities detailed in the evidence is shown by the fact that during the 18 months following the death the executors made a substantial profit. The decedent was accustomed for many years to draw $50 per week as a salary for himself; but it is said that "during the last part of the last year he drew only $35." The value of his personal services should be deducted from the profits as stated, in order to ascertain the annual income for the purpose of calculating good will. This requires that, in addition to the drafts actually made by him for salary, there should be subtracted from the statement of actual profits $15 a week for six months, or $360. There should also be deducted from the profits of each year interest upon capital employed in the enterprise; and, while it is said that there was no capital, it is clear that there was an investment in machinery, tools, fixtures, and office furniture, and that these chattels were at least worth $1,916.57 at the time of the death.

Since the deficit during the last 7½ months of the decedent's life should be taken into the problem, no just average can be made unless the profits for the 3 complete fiscal years preceding the fractional period be also regarded. The interest upon capital invested in machin-

ery, etc., for 3 years 7½ months is $416.82. The profits for the last 3 years 7½ months of the decedent's conduct of the business, allowing for the loss incurred during the 7½ months, and less $360 for salary not taken, and $416.82, interest on capital, were $5,894.58. This makes $1,489.15, average annual profit, and three times that sum yields the value of the good will, $4,467.45, with which the executors are chargeable.

The tenth objection is not pressed and is not well founded.

The eleventh objection is sustained only so far as it applies to the sum of $50, paid by the executors to counsel for advice with respect to the restoration of the sums improperly loaned to the Beatty Tip Printing Company. There is no reason why executors should be credited with a sum paid on their own personal account for guidance in the correction of their own maladministration.

The disposition of the nineteenth objection is reserved until the entry of the decree. If this estate is restored, there is no apparent reason why the executors should not have the legal compensation of their office.

Decreed accordingly.